UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERESA ROUNDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 3493 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before this Court are cross-motions for summary judgment.

## BACKGROUND

On June 28, 2004, Plaintiff, Teresa Rounds, filed an application for Disability Insurance Benefits and Supplemental Security Income, alleging that she became disabled on March 1, 2000, due to joint pain, mental illness, and coronary artery disease. Round subsequently amended her onset date to May 10, 2003. Rounds' date last insured was June 30, 2004. Rounds' application and her subsequent request for reconsideration were denied. Rounds' request for a hearing was granted. The hearing was held on August 3, 2006.

Rounds is fifty years old, 5'7" tall and weighs 217 pounds. Rounds lives with her daughter and her three grandchildren. Rounds graduated from high school and completed two to three years of college.

In April 1995, Rounds was admitted to Michael Reese Hospital with a history of myocardial infarction, hypertension, and coronary artery disease and underwent a three-vessel coronary artery bypass surgery. Rounds returned to the hospital in 1996 for a strange feeling in her left arm and in 1997, at which time she underwent a total abdominal hysterectomy and bilateral salpingoophor.

Beginning in 1998, Rounds was treated by a psychiatrist for depression. In July 2004, this psychiatrist (whose name is not legible) noted that Rounds had marked limitations in social function and in concentration, persistence, and pace.

In 2003, Rounds began seeing Dr. Traci Powell, a psychiatrist at the Community Mental Health Council, on a monthly basis. In October 2003, Dr. Powell opined that Rounds had "major depression, grief, etoh [alcohol] behavior in past." Dr. Powell assigned Rounds a Global Assessment of Functioning ("GAF") rating of 70-75. Dr Powell noted that Rounds had trouble sleeping through the night but was "regaining energy, motivation, hope, etc." In June 2004, Dr. Powell noted that Rounds continued to have family stressors "but reports improvement in depressive symptoms." Rounds' GAF rating was 55-60. In July 2004, Dr. Powell opined that Rounds' level of impairment for "activities of daily living" and "concentration, persistence, and pace" were "extreme," and her level of impairment for "social functioning" was "marked." In August 2004, Dr. Powell noted that Rounds stated she "was feeling fine" and that she was "experiencing pain intermittently which exacerbates her depression."

In February 2005, Dr. Powell completed a "Medical Impairment Questionnaire" on Rounds' behalf. Dr. Powell noted that Rounds had poor memory, poor appetite, sleep and mood disturbances, pervasive loss of interests, difficulty thinking or concentrating, and decreased energy. Rounds was taking Prozac, which improved her condition; but her condition was

2

expected to last longer than twelve months and exacerbated her physical pain. Dr. Powell opined that Rounds' impairments would cause her to miss more than three days per month of work and that Rounds was unable to maintain attention for two-hour segments or work in close proximity to others. Rounds was "seriously limited" in her ability to maintain regular attendance, sustain an ordinary routine without supervision, make simple decisions, complete a normal workday week without interruptions, or perform at a consistent pace without rest periods. Her GAF score was 55.

In June 2006, Rounds was admitted to the emergency room of the University of Chicago for gastroenteritis; at which time, she was examined by Dr. Yoon. Rounds complained of joint pain in the left elbow and both knees. Dr. Yoon noted Rounds' moderate obesity and history of coronary artery disease. X-rays taken on June 21, 2006, revealed bilateral large osteophytes in the lateral aspect of the bilateral acetabula, consistent with marked osteoarthritis. Dr. Yoon prepared a Residual Functional Capacity Questionnaire regarding Rounds' osteoarthritis and her level of pain. Dr. Yoon opined that Rounds had difficulty walking three blocks, could sit for two hours out of an eight-hour day, and could stand no more than ten minutes continuously. He noted Rounds had an abnormal gait and reduced grip strength. If Rounds was to work in a sedentary job, she would need periods of walking every thirty minutes for ten-minute intervals. She was capable of performing low-stress jobs, and her depression and emotional impairments contributed to her pain and functional limitations. He opined that Rounds required a job that allowed her to shift positions from sitting to standing or walking and that she would sometimes have to take unscheduled breaks during an eight-hour workday. He opined that Rounds could use her hands and fingers fifty percent of the day for grasping, turning objects, and fine manipulations, but she would miss work up to two days per month due to her impairments.

Rounds testified that she worked at a law firm where she provided litigation support to attorneys from 1986 to 1997, when the law firm closed. At that time, Rounds did not work in order to care for her elderly and ill parents. Rounds' mother passed away in February 2002, and her father passed away in April 2002. Rounds' then went to Kennedy-King College on a full-time basis and worked in the financial aid department of the college until May 2002.

Rounds stopped working and is presently not working due to depression and pain from her osteoarthritis. Because of her depression, Rounds did not groom herself and had trouble getting out of bed. Rounds is capable of driving, feeding herself, and cooking; but she usually does not cook. She spends approximately seven hours per day watching television. Rounds also helped watch her grandchildren with the assistance of a teenage neighbor.

Rounds walks with the assistance of a cane that was "prescribed" by a physical therapist. Rounds was referred to a physical therapist for treatment of her arthritis by her general doctor. Rounds went to physical therapy twice in 2004, six times in 2005, and was attending physical therapy on a weekly basis at the time of the hearing.

In 2003, Rounds could comfortably walk approximately half a mile, could stand approximately twenty minutes, and could sit for approximately forty-five minutes, after which time she would need to stretch. Rounds could lift a gallon of milk and could stoop or squat with difficulty.

Thomas Dunleavy, a vocational expert ("VE"), also testified at the hearing. Dunleavy, at the request of the ALJ, considered a hypothetical individual of Rounds' age, educational background and past work experience, who was limited to sedentary work of simple tasks (one or two-step tasks) could not perform any of Rounds' previous jobs. A job that was available under this hypothetical included some assemblers, "there would be, the, DOT indicates an

example would be a compact assembler." Dunleavy opined that there would be approximately 4,000 of this type of job in the Chicago metropolitan area. Another job would be packagers, of which 4,000 to 5,000 jobs existed in the Chicago metropolitan area. Lastly, this person could perform the job of a cashier, of which there are approximately 3,000 in the Chicago metropolitan area. If a further limitation of no production-rate pressures was added, there would be no jobs for that individual.

In November 2004, Dr. Barry A. Hurwitz, a state agency psychologist, reviewed Rounds' medical evidence. Dr. Hurwitz opined that Rounds suffers from a mental impairment (mood disorder, alcohol abuse) that was not severe. Dr. Hurwitz noted inconsistencies between Dr. Powell's contemporaneous treatment records and the "extreme limitations" she described in her 2005 Medical Impairment Questionnaire.

Dr. Avigdor I. Niv, a non-examining physician, reviewed Rounds' medical evidence as to her claim of osteoarthritis, finding "[t]he over 100 page MER does not include any objective musculoskeleton findings. There is insufficient documentation to assess the claimant's allegations."

Administrative Law Judge Regina M. Kossek ("ALJ Kossek") ruled that Rounds was not disabled. In making this decision, ALJ Kossek found that Rounds last met the insured status requirement of the Social Security Act on June 30, 2004; therefore, she was required to establish her disability on or before that date in order to be entitled to disability insurance benefits. Through the date of last insured, ALJ Kossek found that Rounds had severe impairments of chronic ischemic heart disease, cardiovascular disease, depression, obesity, and hypertension.

After reviewing Rounds' relevant medical records, ALJ Kossek found that Rounds had mild restrictions in her daily activities, in maintaining social functioning, and in maintaining concentration, persistence and pace. ALJ Kossek noted that the two July 2005 assessment forms by Rounds' mental health doctors were completed in an attempt to aide Rounds in receiving public aid and that neither doctor delineated any specific justification for the severity of their assessed limitations. ALJ Kossek noted that the doctors saw Rounds on an infrequent basis, given the marked or extreme limitations that were assessed. Furthermore, Dr. Powell failed to support the assessed limitations in light of Rounds' GAF scores, which were within normal ranges, and her multiple notations that Rounds was improving and feeling fine, even though she was only partially compliant with her medications and was continuing to use alcohol during the relevant time of insured.

As to Rounds' physical impairments, ALJ Kossek found that the records failed to support her claim of osteoarthritis in all of her joints. ALJ Kossek noted the lack of any objective musculoskeletal findings within the records as of or prior to the date last insured. ALJ Kossek accorded little weight to Dr. Yoon's assessment because the assessment was based on Rounds' subjective complaints rather than objective evidence, noting no diagnostic studies or laboratory findings that would support the diagnosis as of or prior to the date last insured. Furthermore, Dr. Yoon failed to provide any objective treatment records and failed to delineate a specific time frame for which his opined limitations were applicable. As to the remaining physical impairments of heart disease, obesity, and hypertension, ALJ Kossek found that the severity of these impairments did not meet or equal any disorder.

ALJ Kossek further found that, through the date of last insured, Rounds had the residual capacity to engage in simple tasks with a higher level of judgment than that of just repetitive tasks; she could deal with limited changes in the work setting; she could engage in sedentary work but could not climb ropes or ladders; and she required the ability to shift positions every half hour. ALJ Kossek found, after considering the evidence of record, that Rounds' "medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that [Rounds'] statements concerning the intensity, persistence and limiting effects of these sympstoms are not entirely credible."

ALJ Kossek found that Rounds was precluded from performing substantial gainful activity in her past relevant work; but, based on vocational expert testimony, Rounds was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.

## ANALYSIS

An ALJ's findings constitute the final decision of the Commissioner of the Social Security Administration if the Appeals Council finds no basis for further review. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (*Smith*). Under such circumstances, the decision of the ALJ is the decision reviewed by the district court. *Ears v. Secretary of the Dept. of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). In this review, the district court examines the entire record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000) (*Powers*). The ALJ's decision will not be reversed if it is supported by substantial

evidence, which is evidence "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*Perales*); *Powers*, 207 F.3d at 434.

In order to qualify for disability benefits, a claimant must be "disabled" under the Social Security Administration. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (*Briscoe*). The determination of whether a claimant suffers from a disability as defined in the Social Security Act is conducted through a five-step inquiry, evaluated in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

The claimant has the burden of proof for steps 1 through 4. The commissioner has the burden of proof for step 5. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (*Clifford*).

Rounds first argues that the ALJ failed to properly weigh the opinions of Rounds' treating physician and psychiatrists. A treating medical provider's opinion as to the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). If the treating medical provider's opinion is not supported by medical evidence and is inconsistent with the claimant's record, the ALJ does not give the treating medical provider's opinion controlling weight. Instead, the ALJ determines independently the weight to be given to the opinion based on the following factors: (1) the length, frequency, nature and extent of the treatment relationship; (2) the degree to which the medical signs and

laboratory findings support the opinion; (3) the consistency of the opinion with the record as a whole; and (4) the specialization of the treating medical provider. *See* 20 C.F.R. § 404.1527(d)(2), (3), (4) & (5).

ALJ Kossek accorded little weight to Dr. Yoon's assessment regarding Rounds' osteoarthritis based on Dr. Yoon's reliance of Rounds' subjective complaints rather than objective evidence, noting no diagnostic studies or laboratory findings that would support the diagnosis as of or prior to the date last insured. Furthermore, Dr. Yoon failed to provide any objective treatment records and failed to delineate a specific time frame for which his opined limitations were applicable. Rounds argues this assessment was improper because Dr. Yoon did not soley rely on Rounds' subjective complaints, and Rounds' 2006 x-ray supported Dr. Yoon's assessment. However, as noted by ALJ Kossek, Dr. Yoon's assessment was based on his examination and the x-ray of Rounds taken in 2006, two years after the relevant date of last insured. Thus, as to the relevant time period, Dr. Yoon's opinion was not supported by medical evidence. ALJ Kossek also found that the assessment was not consistent with the record based on the lack of objective findings as of or prior to the date of last insured. This finding is also supported by the evidence as to Rounds' condition at the relevant time, *i.e.*, in May 2004, Rounds complained only of intermittent right knee pain, which improved with Tylenol.

Rounds further argues that if ALJ Kossek believed that objective findings were necessary, she should have ordered them. The ALJ has a duty to develop a full and fair record; however, the claimant has the burden to prove his or her disability. *See Smith*, 231 F.3d at 437. While the ALJ can order additional evidence, he or she is not required to do so if the evidence before the ALJ is sufficient to determine whether the claimant is disabled. *See Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). Here, ALJ Kossek found there was sufficient evidence in the

9

record to render her decision. Furthermore, Rounds fails to identify what other evidence was available that ALJ Kossek might have obtained at the time of the hearing that was relevant to her condition in June 2004.

ALJ Kossek also afforded little weight to Dr. Powell's opinions, finding that she failed to identify specific justification for the severity of her assessment, which she found to be inconsistent with the relevant medical records that demonstrated Rounds' GAF scores were within normal ranges and multiple notations that Rounds' mental health was improving. ALJ Kossek's determination to afford little weight to Dr. Powell's opinion is supported by the substantial evidence in the record.

Lastly, as to Rounds' treating doctors' opinions, Rounds argues that ALJ Kossek failed to consider the factors in 20 C.F.R. § 404.1527(d) set forth above. Rounds' argument lacks merit as ALJ Kossek specifically noted: the length, frequency, and nature and extent of Rounds' treatment with the treating medical providers; the degree to which the opinions were supported by objective medical evidence; and the consistency of the opinion with the record as a whole.

Based on the above, ALJ Kossek's determination to afford Rounds' treating medical providers little weight is supported by substantial evidence.

Rounds next argues that ALJ Kossek failed to make specific findings in support of her credibility determination. An ALJ's determination or decision on credibility must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave the individual's statements and the reasons for that weight." SSR 96-7p. An ALJ's credibility determination must contain more explanation than a simple reference to the factors considered in making the determination. *See Zurawski v. Halter*,

245 F.3d 881, 887 (7th Cir. 2001) (*Halter*). In *Halter*, an ALJ, in making a credibility determination, made reference to Plaintiff's inconsistent testimony; however, the ALJ erroneously failed to elaborate on the specifics of these inconsistencies. *Halter*, 245 F.3d at 887.

In the present case, ALJ Kossek considered the credibility of Rounds' testimony and found that her testimony as to intensity, persistence and limiting effects of her symptoms were "not entirely credible." ALJ Kossek noted that she considered the evidence of record and also set forth several reasons that Rounds' testimony as to her limitations was not credible. However, ALJ Kossek failed to explain in sufficient detail why Rounds' testimony as to the intensity and persistence of her symptoms was not credible. Instead, as to these two determinations, ALJ Kossek stated that the determination was made "[a]fter considering the evidence of record." As such, the necessary degree of specificity is lacking. *See Halter*, 245 F.3d at 887. Thus, ALJ Kossek's credibility determination constitutes legal error.

Rounds also argues that the ALJ failed to comply with SSR 00-4p, which requires the ALJ to determine whether the vocational expert's testimony is consistent with the *D.O.T.*[1] An ALJ has an affirmative duty to ascertain whether the vocational expert's testimony is consistent with the *D.O.T. See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (*Prochaska*). However, an ALJ's failure to make such a determination is harmless if it does not affect the outcome of the case. *See e.g., Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("in administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision."). A reviewing court may remand an ALJ's decision if it is not clear from the record whether the ALJ committed harmless error by failing to

---

[1] U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

compare the testimony of a vocational expert to the *D.O.T.* *See Prochaska*, 454 F.3d at 736 (remanding case for determination of whether the ALJ had committed harmless error by failing to compare vocational expert's testimony to the *D.O.T.* in order to determine the presence of any inconsistencies).

In the present case, Defendant concedes that ALJ Kossek failed to expressly ask the VE whether his testimony was consistent with the *D.O.T.* But Defendant argues that the VE referred to the *D.O.T.* during his testimony and that Rounds failed to establish that, in fact, the VE's testimony was inconsistent with the *D.O.T.* The mere reference to the *D.O.T.* by the VE is not sufficient to satisfy the ALJ's affirmative duty to specifically ask the VE about any possible conflicts with the *D.O.T.* *See Prochaska*, 454 F.3d at 735. Furthermore, while the VE did identify certain examples of positions Rounds was capable of performing, it cannot be determined from the record whether the positions cited by the VE are consistent with the *D.O.T.* The issue remains for further adjudication.

Rounds further argues that ALJ Kossek erred in failing to address the combination of Rounds' impairments. In light of the above findings, this argument need not be considered at this time.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied. Plaintiff's Motion for Summary Judgment is granted. The decision of the ALJ is vacated, and this proceeding is remanded for further proceedings consistent with this opinion.

Dated: January 24, 2008

JOHN W. DARRAH
United States District Court Judge

12